AFFIDAVIT OF CHRISTIAN M. FIERABEND
IN SUPPORT OF A CRIMINAL COMPLAINT

I, Christian M. Fierabend, do hereby depose and state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed for nine years. I am currently assigned to the Boston Division of the FBI in Boston, Massachusetts. I am currently assigned to the Boston Violent Crimes Task Force, which is comprised of personnel of the FBI, Massachusetts State Police, and the Boston, Malden, Saugus, and Somerville Police Departments.

2. As a Special Agent with the Violent Crimes Task Force, I have responded to numerous bank robberies. I have also received specialized training regarding investigative techniques, evidence collection, and evidence preservation.

3. As a Special Agent with the Violent Crimes Task Force, I have responded to numerous bank robberies. I am aware that 18 U.S.C. § 2113(a) makes it a crime for anyone by force and violence, or by intimidation, to take, or attempt to take, from the person or presence of another, any property or money or any other thing of value belonging to, or in the care custody, control, management, or possession of any federally insured bank. I am further aware that 18 U.S.C. § 2113(d) provides additional potential punishment for anyone who, in the course of committing an offense described in 18 U.S.C. § 2113(a), assaults any person, or puts in jeopardy the life

of any person by the use of a dangerous weapon or device. I am also aware that 18 U.S.C. § 924(c) makes it a crime for anyone to use or carry a firearm during and in relation to the commission of a crime of violence prosecutable in a court of the United States. Finally, I am aware that 18 U.S.C. § 922(g)(1) makes it a crime for anyone, having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, to possess in or affecting commerce a firearm or ammunition. Having so said, I make this affidavit in support of a criminal complaint charging Joseph G. Rachal ("Rachal"), DOB xx/xx/1951, of Everett, MA, with: the armed bank robbery of a branch of the TD Bank at 391 Market Street, Brighton, MA, on November 19, 2015; using or carrying a firearm during the commission of a crime of violence; and being a previously convicted felon in possession of a firearm. The facts stated herein are based on my own personal involvement in this investigation and my discussions with other law enforcement officers also involved in the investigation. In submitting this affidavit, however, I have not included each and every fact known to me about the investigation, but only those facts which I believe are sufficient to establish the requisite probable cause that the above mentioned crimes were committed by Joseph G. Rachal.

## TD BANK NOVEMBER 19, 2015

4.   On November 19, 2015, at approximately 4:50 p.m., a masked individual entered a branch of the TD Bank located at 391 Market

Street, Brighton, MA. The individual approached a teller ("Teller #1"), pointed a gun at him, and stated, in substance, "Give me the money I'm not playing." The individual then went to a second teller ("Teller #2"), pointed the gun at her, and stated, in substance, "Give me the money, I'm not playing." As Teller #2 was retrieving money from her drawer, the individual started banging the gun on Teller #2's counter. Teller #2 handed the individual U.S. currency from her drawer. The individual then went back to Teller #1, pointed the gun at him again, and stated, in substance, "Give me the money I'm not playing." Teller #1 then handed the individual U.S. currency from his drawer. The individual took the money and exited the bank.

5. Following the robbery the two tellers who had interacted with the robber were interviewed. Both tellers stated, among other things, that the robber appeared to be a black male wearing a dark mask; that the robber appeared to be 5'6" and approximately 150 pounds; and that the robber pointed a gun at them during the robbery.

6. Bank surveillance cameras were functioning and operating on the date of the robbery. The cameras captured images of the robber wearing a dark rubber mask, a baseball hat, a tan jacket, tan pants and carrying a dark nylon bag. The robber is also observed wearing a dark hooded jacket under the tan jacket. The robber is observed entering the bank, pointing what appears to be a black semi-automatic firearm at the two tellers, taking money, and then leaving the bank.

7. A post-robbery audit conducted by the TD Bank determined that the robber took $2,397.00 in U.S. currency.

## THE ARREST OF JOSEPH G. RACHAL

8. Within moments of the robbery, a be-on-the-lookout alert ("BOLO") was issued regarding the robbery of the TD Bank on Market Street. The first BOLO described the individual as a male wearing a brown mask and carrying a black handgun. A second BOLO was issued shortly thereafter. This BOLO additionally described the individual as a short black male, dark skin, wearing a tan jacket a green hat, and carrying a firearm. This second BOLO stated that the individual had exited the bank onto Surrey Street. I am aware that the TD Bank is located at the corner of Surrey Street and Market Street and that the bank's parking lot accesses both Surrey and Market Streets.

9. Minutes after receiving the BOLO and the updated BOLO, Boston Police officers responded to the area of the TD Bank. Upon arrival officers observed an individual wearing dark jacket, tan pants, and carrying a black soft nylon bag hiding behind an SUV that was parked on the corner of Bennett and Market Street. I am aware that Bennett Street runs parallel to Surrey Street, intersects with Market Street, and is one block from the TD Bank. I am aware that it is possible to get on foot from Surrey Street to Bennett Street without going out to Market Street. Based on my training and experience I know that individuals who rob banks often change their

appearance and clothing in an attempt to avoid detection by law enforcement during their escape. I am also aware that individuals who rob banks also sometimes utilize other individuals to serve as "lookouts" during bank robberies. These "lookouts" usually locate themselves away from the bank's locations in an attempt to assist the individual who robs the bank.

10. Upon seeing the individual behind the SUV, the officers stopped, exited their vehicles, and identified themselves as Boston Police officers. The officers observed the individual, later determined to be a white male, get up from his position behind the SUV and start running away from them and onto Market Street. The officers noted that the individual was carrying a black nylon bag with him as he ran.

11. The officers continued their pursuit, continuing to identify themselves as Boston Police Officers, and pursued the individual onto Market Street. During the pursuit the individual stopped, turned towards the officers, and assumed a "bladed stance." Based on my training and experience I know that individuals who assume "bladed stances" often do so when armed with a firearm or other dangerous weapon so that the weapon is not visible to the police.

12. The officers caught and then brought the individual under control after a brief struggle. The individual proved to be Rachal. Officers immediately pat-frisked Rachal for their safety. Located

on Rachal's pant's belt was a hard object that proved to be a UNIDEN Bearcat scanner with earbuds. The scanner was tuned to a Boston Police Department radio frequency. Based on my training and experience I know that individuals who rob banks often monitor police department radio frequencies and transmissions in an attempt to avoid law enforcement officers responding to a robbery.

13. At the time the officers encountered him, Rachal was wearing a dark-colored fleece jacket, a black North Face hooded jacket, a pair of tan pants, sneakers, and a black mask with eye holes cut out that was pulled down around his neck.

14. The black nylon bag that Rachal had been observed carrying fell to the ground during the struggle. An officer picked up the bag and noted that it felt heavy. The officer then felt the outside of the bag and felt a hard object inside the bag. Based on this officer's training and experience the officer believed the item to be a handgun. The officer opened the bag and it proved to contain these items:

1. a black Glock 9mm firearm with obliterated serial numbers containing one live chambered round and a magazine containing 14 additional live rounds of ammunition;
2. one loose magazine containing 15 rounds of live ammunition;
3. one rubber face mask having the appearance of dark-colored skin;
4. one pair of black and grey gloves;
5. one tan jacket;
6. three clear plastic bags;
7. one blue baseball hat; and
8. $2,397.00 in U.S. currency.

The items recovered from the black nylon bag are consistent with the description of items used by the robber during the robbery of the TD Bank. I have reviewed the surveillance videos of the robbery and the mask, the jacket, the hat, and the gloves are consistent with the video images of items worn by the robber. The U.S. currency found in the black nylon bag is the exact amount taken by the robber during the robbery of the TD Bank

15. Based on my training and experience and my conversations with other members of law enforcement, I know that Glock firearms are manufactured outside the Commonwealth of Massachusetts, and that no ammunition is commercially manufactured in Massachusetts. As such, the firearm traveled in and affected interstate commerce before November 19, 2015.

16. I have reviewed Rachal's Massachusetts Board of Probation record and determined that, prior to November 19, 2015, Rachal had one or more convictions for crimes punishable by a imprisonment for a term exceeding one year, as that term is used in 18 U.S.C. § 922(g)(1).

## CONCLUSION

17. Based on the foregoing, I believe there is probable cause to believe that on November 19, 2015, Joseph G. Rachal, did by force and violence, and by intimidation, take, or attempt to take, from the person or presence of another, property or money or any other thing of value belonging to, or in the care custody, control,

management, or possession of a federally insured bank, and in committing such offense did assault and did put in jeopardy the life of another person by the use of a dangerous weapon, that is a firearm, in violation of 18 U.S.C. § 2113(a) and (d); that Rachal did use and carry a firearm during and in relation to the commission of such crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A); and that Rachal did possess, in or affecting commerce and subsequent to a conviction of a crime punishable by imprisonment for a term exceeding one year, a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

_____
CHRISTIAN M. FIERABEND
Special Agent FBI

Sworn and subscribed to before me this 22 day OF January 2016.

_____
MARIANNE B. BOWLER
United States Magistrate Judge